**Jean P. ARENS, Plaintiff and Appellant,**

v.

**Gerald (a/k/a Jerry) F. ARENS, Defendant and Appellee.**

**No. 15239.**

Supreme Court of South Dakota.

Considered on Briefs Nov. 18, 1986.

Decided Feb. 11, 1987.

Mary Lou Jorgensen of Pruitt, Matthews & Mullenburg, Sioux Falls, for plaintiff and appellant.

John E. Burke, Sioux Falls, for defendant and appellee.

MORGAN, Justice.

Appellant Jean P. Arens (Jean) appeals certain portions of a judgment and decree of divorce from Gerald F. Arens (Gerald) granted her by the trial court. We affirm in part and reverse and remand in part to the trial court for further proceedings.

This case involves a divorce action initiated by Jean wherein she alleges extreme cruelty against Gerald. Gerald filed an answer in counterclaim alleging extreme cruelty against Jean. Gerald offered no testimony at trial and the trial court determined that Gerald was at fault in the termination of the marriage and awarded Jean a decree of absolute divorce. The trial court allowed Jean to occupy the marital home until it was sold, whereupon the net proceeds would be divided equally between the parties. Gerald was ordered to pay Jean rehabilitative alimony in the amount of $400 per month until the sale of the house. The parties also had other acreage which was to be put up for sale, again with the proceeds being divided equally. Each party was awarded personal property in his or her possession at the time of the trial, the value of which was approximately $3500 for each party. Gerald was also ordered to pay Jean's attorney fees.

The parties were married on July 2, 1960, and subsequently had three children, none of whom were minors at the time of the divorce. Jean is a forty-five year old female with a high school diploma. She is in relatively good health aside from some allergies and a slight problem resulting from some alleged physical abuse by Gerald. Although Jean did not work full time during the marriage, she has now obtained full-time employment at the Veterans Ad-

ministration in Sioux Falls, South Dakota. Jean earns approximately $14,000 per year at the Veterans Administration. Gerald is a police officer with the city of Sioux Falls and earns approximately $24,000 per year. At the time of the divorce decree, each party had a vested retirement account, Jean's amounting to approximately $1,400 and Gerald's amounting to approximately $24,600.

Jean makes three contentions on appeal. Initially, she asserts that the trial court erred by not including the respective retirement accounts in the marital assets. Secondly, Jean claims that the trial court abused its discretion in refusing to grant her alimony for the remainder of her life or until she remarries. Thirdly, Jean claims that the trial court erroneously characterized the $400 per month as rehabilitative alimony.

At this point we dispose of the third issue on appeal since Jean did not cite any authority supporting the contention. *Corbly v. Matheson,* 335 N.W.2d 347 (S.D. 1983); *State v. Shull,* 331 N.W.2d 284 (S.D. 1983); *Graham v. State,* 328 N.W.2d 254 (S.D.1982).

■ We next examine the issue of whether the retirement accounts should have been included as marital assets and divided between the parties. We believe the recent case of *Stubbe v. Stubbe,* 376 N.W.2d 807 (S.D.1985), supports Jean's contention. We also note that Gerald's brief in opposition cites no authority to the contrary and makes no attempt to distinguish the *Stubbe* case. The language of *Stubbe* is quite applicable here.

The trial court is entitled to make an equitable division of all marital assets belonging to either spouse. SDCL 25–4–44. A retirement plan has been recognized as a divisible marital asset since it represents consideration in lieu of a higher present salary. *Hansen v. Hansen,* 273 N.W.2d 749 (S.D.1979).

376 N.W.2d at 809. We believe that the trial court erred by not including the retirement accounts in the division of marital assets.

■ Jean's second contention is that she should receive alimony either until her death or until remarriage, rather than just until the sale of the marital home. In awarding alimony, the trial court must consider six factors: " '(1) the length of the marriage; (2) their respective earning capacity; (3) their respective financial condition after the property division; (4) their respective age, health and physical condition; (5) their station in life or social standing; and (6) the relative fault of the parties in the termination of the marriage.' " *Hanks v. Hanks,* 296 N.W.2d 523, 527 (S.D. 1980) (quoting *Guindon v. Guindon,* 256 N.W.2d 894, 898 (S.D.1977)). We conclude that several of the factors including length of the marriage, respective earning capacities, social standing, and relative fault of the parties weigh in favor of Jean. One other crucial factor, the respective financial condition after the property division, is unsettled at present due to the error below in dividing the marital assets. We also note that the trial court expressed a willingness to reconsider the alimony award. In a December 11, 1985, letter to counsel the trial judge stated: "I will take another look at the rehabilitative alimony award at the time the house is sold and the sale submitted to me for confirmation." In light of the incomplete record and the trial court's willingness to reconsider the alimony, we decline at this time to find that the trial court abused its discretion in this matter.

Finally, we take up Jean's motion for the award of attorney's fees incurred during this appeal. Jean was only partially successful on her claims, therefore we award $660.00 in fees, $39.60 in sales tax, and $271.85 in costs for a total of $971.45.

We affirm in part and reverse and remand in part to the trial court for proceedings not inconsistent with this opinion.

WUEST, C.J., and FOSHEIM, Retired Justice, concur.

HENDERSON and SABERS, JJ., concur specially.

MILLER, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

HENDERSON, Justice (specially concurring).

A letter is not a Finding of Fact or Conclusion of Law. There was no Finding of Fact or Conclusion of Law establishing a vested interest of the husband in his retirement account of $24,648 nor of the wife's retirement account of $1,400. Here, the court accepted these "vestings" by letter. There was evidence that came in, post trial, by way of letter and communication to the court as to the valuation of these "vestings."

If the trial court is to consider these valuations regarding "vestings," and it appears that both parties recognize that they have a "vested interest," then the record should be opened up and there should be a Finding of Fact and a Conclusion of Law with respect thereto. SDCL 15–6–52(a) sets forth the proper procedure for serving proposed findings of fact and conclusions of law and proposed judgment; thereafter, a procedure is set forth, statutorily, concerning the withholding by the court of the entering of findings for a period of five days after service; thereafter, the court thereupon enters findings of fact and conclusions of law and judgment as it deems proper. Where there has been a failure to enter proper findings of fact and conclusions of law, we have held that this constitutes reversible error. *Stanton v. Saks*, 303 N.W.2d 819 (S.D.1981) (per curiam); *Talbert v. Talbert*, 290 N.W.2d 862 (S.D. 1980). Thus, I would reverse and remand with directions for the trial court to take such further evidence/enter such explicit findings of fact and conclusions of law and judgment which are necessary under the evidence. In *Stubbe v. Stubbe*, 376 N.W.2d 807, 809 (S.D.1985) (Henderson, J., dissenting), there was no evidence on vesting. Here, we do have some evidence, albeit by letter after the trial, which could support a finding of a vested interest of a husband and a wife in a retirement account. In other words, we have some civil procedure that needs righting.

Justice Sabers writes specially on what he terms "take another look" at the rehabilitative alimony award. In *Connelly v. Connelly*, 362 N.W.2d 91, 97 (S.D.1985) (Henderson, J., dissenting), I decried an "open-ended" alimony award. True, the circumstances were different in *Connelly*, but the principle is still the same: "Open-ended" alimony awards are adjudicating upon future hypotheses and, thus, have no degree of certainty. Therefore, a party becomes an unwitting hostage to a future domestic or economic event.

Jean, as the majority opinion refers to her, has a healthy body and a decent paying job by standards of the economic plight of the working people in South Dakota. The trial court specifically found that she had "generally good health." She does hold down a steady job and there is not one shred of evidence to suggest that she cannot earn a living by the product of her own labors. Thus, she can support herself and will not be a burden on society. In sum, she does not need to be rehabilitated. There is no finding of fact or conclusion of law indicating that she needs to be rehabilitated; yet, the trial court, in Conclusion of Law 7, without any finding whatsoever to back it up, expressed that "[t]he Defendant should pay the Plaintiff rehabilitative alimony in the sum of $400 per month, until such time as the residence of the parties is sold." Obviously, the trial court never intended that Jean receive rehabilitative alimony for any extended period of time but believed that she would need some temporary alimony to make some adjustments until the house was sold. Then, the so-called "rehabilitative alimony" would terminate.

This Court, by its language, now invites the trial court to enter some type of "rehabilitative alimony." There is nothing in this record which substantiates rehabilitative alimony. If rehabilitative alimony is granted herein, it is because of sympathy generated by unobjective assertions on behalf of Jean.

In *Martin v. Martin*, 358 N.W.2d 793, 801 (S.D.1984), (Henderson, J., concurring in part and dissenting in part), I expressed a fear of the new concept of rehabilitative alimony in this state. What I feared then, now is vividly illustrated in this case. Someone wishes to stand under the tree to taste the sweetness of its bounty. In *Martin*, at 801, I expressed:

> Rehabilitative alimony is a new concept to South Dakota and I fear its expansion where no rehabilitation is necessary. Although not blessed with mystic legal powers, I reasonably foresee onrushing domestic litigation seeking rehabilitative alimony as it is "new law in South Dakota." When a new tree suddenly appears in the orchard bearing fruit, it is likely that there are those who would stand under the tree to taste the sweetness of its bounty.

Jean has sufficient funds to defray her own attorney's fees on appeal and the liquidity of the parties' financial condition is such that each party should, in my opinion, defray their own attorney's fees.

SABERS, Justice (specially concurring).

I write only to comment on the proposed procedure of the trial court to "take another look" at the rehabilitative alimony award at the time the house is sold and the sale submitted for confirmation. Although this procedure may work in this instance, more frequently it will force a second hearing, leave matters open-ended too long, require unnecessary duplication in court time, attorney time and litigants time, and result in increased costs and expenses to all involved. I recommend against its future use.